# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Element Fleet Corporation
f/k/a PHH Vehicle Management
Services, LLC

v.  Civil No. CCB-18-2297

Forklift Exchange, Inc

## MEMORANDUM

This dispute arises out of a contract between Element Fleet Corporation ("Element") and Forklift Exchange, Inc ("Forklift") for the consignment of two pieces of equipment. Currently pending before the court is Forklift's motion to dismiss the complaint. For the reasons outlined below, the court will deny Forklift's motion. The issues have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).

## BACKGROUND

On December 18, 2012, Element and Forklift entered into a Consignment Agreement (the "Agreement") in Maryland. (Compl. ¶¶ 5–6, ECF No. 1). In 2016, in accordance with the Agreement, Element delivered two lifts—a Yale Lift Model P1100-48 (the "P1100 Model Lift") and a Yale Lift Model P500-48 (the "P500 Model Lift")—to Forklift. (*Id.* ¶ 10). These lifts were given to Forklift for a consignment period. (*Id.* ¶ 7). During this period, Forklift agreed to market the lifts to potential customers. (*Id.*). If a buyer was found, Forklift was entitled to purchase the lifts from Element for a "predetermined set price established by [Element] *prior* to [Forklift] selling" the lifts to the buyer. (*Id.* ¶ 8). Element alleges that Forklift agreed to purchase prices of

$150,000.00 for the P1100 Model Lift, and $125,000.00 for the P500 Model Lift. (*Id.* ¶ 11). But Element alleges that Forklift has neither paid the agreed upon purchase price, nor returned the lifts to Element, despite repeated requests from Element to do so. (*Id.* ¶¶ 12–14).

On July 27, 2018, Element initiated this suit against Forklift, alleging: (1) breach of contract (Count I); and (2) conversion (Count II). (*Id.* ¶¶ 16–29). Element seeks monetary damages. (*Id.* ¶¶ 22, 29).

## STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to

2

demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In general, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011). But there are several exceptions to this rule. A court may consider documents attached to the complaint. *See* Fed. R. Civ. P. 10(c). A court may also consider documents attached to the motion to dismiss if the documents are "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge [the documents'] authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint, even if those documents are not attached to the complaint as exhibits. *New Beckley Min. Corp. v. Int'l Union, United Mine Workers*, 18 F.3d 1161, 1164 (4th Cir. 1994) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). And, if any of these properly considered extra-pleading materials conflict with the allegations in the complaint, the extra-pleading materials prevail. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 683 (D. Md. 2001).

## ANALYSIS

Forklift argues that the court should dismiss Element's complaint under the doctrine of *forum non conveniens*, and, alternatively, that the court should dismiss the complaint because Element fails to state a claim for either breach of contract or conversion. The court considers these arguments in turn.

3

Forklift argues that the court should dismiss the complaint under the doctrine of *forum non conveniens* because the Agreement contains a forum selection clause that elects the state court of "Cook County, Illinois" as the sole venue for resolution of disputes arising out of the Agreement. (Mem. P. & A. Supp. Def.'s Mot. Dismiss ["Def.'s Mot"] at 3–6, ECF No. 7-1; Def.'s Mot. Ex A ["Purchase Order"], ECF No. 7-2).[1] To assess the merits of Forklift's argument, the court must first determine what contract governs the parties' relationship, and whether that contract contains a forum selection clause.

Forklift attached a Purchase Order to its motion, which it argues constitutes the agreement between the parties. (Purchase Order). And Forklift argues that "Terms and Conditions of Sale," which are available on Forklift's website and include a forum selection clause for Cook County, Illinois, are incorporated into the Purchase Order. (Def.'s Mot. at 4). But Element disputes both the authenticity and the relevance of the Purchase Order. Specifically, Element argues that the Purchase Order is not the Agreement between the parties that forms the basis for this suit. Instead, the Purchase Order is two separate documents that Forklift has strung together that are "unauthenticated, undated and unexecuted" and "make[] absolutely no sense in the context of this case." (Pl.'s Resp. Opp'n Def.'s Mot ["Pl.'s Resp."] at 3–4, ECF No. 8). Element argues that the Agreement between the parties was a consignment agreement—Element retained legal title over the two lifts until Forklift found a buyer and purchased the lifts from Element. Element contends, therefore, that the Purchase Order, which presupposes that Forklift is the seller rather than the buyer of the lifts, does not reflect the consignment arrangement. Because this dispute arises at the motion to dismiss stage, and Element disputes the authenticity of the Purchase Order, the court

---

[1] Specifically, Forklift argues that under *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013), "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60.

4

will not consider it in resolving Forklift's motion. *See American Chiropractic*, 367 F.3d at 234; *see also Kerr v. Marshall University Board of Governors*, 824 F.3d 62, 68 n.1 (4th Cir. 2016) (citing *American Chiropractic*, 367 F.3d at 234)).

Forklift also attaches an email exchange to its motion, which it argues indicates Element's "assent in writing" to the terms and conditions of Forklift's Purchase Order. (Def.'s Reply Ex A ["Flaska Aff."] at 2, ECF No. 9-1; Def.'s Mot. Ex B ["Email Exchange"], ECF No. 7-3). In this email exchange, an Element representative writes that Element would accept $225,000.00 for the two lifts—$150,000.00 for the P1100 Model Lift and $75,000.00 for the P500 Model Lift. (Email Exchange at 1). This conflicts with the allegation in Element's complaint that Forklift agreed to pay $275,000.00 for the two lifts. (Compl. ¶ 11). Element asks the court to strike the emails as impermissible settlement discussions under Federal Rule of Evidence 408. (Pl.'s Resp. at 5). Upon review, it is not clear whether the emails contain settlement discussions, or instead contain price discussions as contemplated under the parties' Agreement.

Regardless, to resolve Forklift's motion, the court need only decide whether Element's complaint states plausible claims for relief. Whether the emails evidence settlement discussions or price negotiations, they do not alter Element's underlying allegation that a contractual obligation existed, and that Forklift breached that obligation. At most, the emails would inform the court's assessment of damages if Element establishes its claim of breach of contract. Accordingly, the court's analysis focuses on Element's complaint and the Agreement that Element attached to its responsive briefing, (Pl.'s Resp. Ex 1 ["Agreement"], ECF No. 8-1), which forms the legal basis for Element's pleadings. *New Beckley Min. Corp. v. Int'l Union, United Mine Workers*, 18 F.3d 1161, 1164 (4th Cir. 1994) (concluding that, in resolving a motion to dismiss, a court may consider documents referred to and relied upon in the complaint, even if those documents are not attached

to the complaint as exhibits). The Agreement does not contain a forum selection clause and the parties do not dispute that it was executed in the state of Maryland. It is, therefore, governed by Maryland law.[2]

To state a *prima facie* claim for breach of contract under Maryland law, a plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001) (citing *Continental Masonry Co., Inc. v. Verdel Const. Co.*, 279 Md. 476, 480 (1977)). Element has sufficiently alleged that Forklift owed Element a contractual obligation, and that Forklift breached that obligation. Specifically, Element alleges that the parties entered into the Agreement on December 18, 2012. (Compl. ¶ 5). Under the terms of the Agreement, Element "delivered used or off-lease equipment to [Forklift] for a consignment period, for purposes of permitting [Forklift] to market the equipment to potential customers, while [Element] retained legal title to, and ownership of, the equipment." (*Id.* ¶ 7). Element consigned two lifts to Forklift with agreed upon purchase prices, and after more than two years, Forklift has neither returned the lifts, nor paid the purchase price, despite requests from Element to do so. (*Id.* ¶¶ 11–15). These factual allegations suffice. Forklift may challenge the Agreement in future proceedings or argue that the parties modified their Agreement after 2012, but at this stage of the litigation, Element has pled sufficient factual allegations to clear the Rule 12(b)(6) hurdle.

---

[2] A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Maryland choice-of-law rules, a court "determining the construction, validity, enforceability, or interpretation of a contract, [must] apply the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015). And a contract is "made where the last act necessary to make the contract binding occurs." *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002); *Rullan v. Goden*, 134 F.Supp.3d 926, 941 n.8 (D. Md. 2015) (same). The last act necessary to make a contract binding is the final party's signature. *See, e.g., Continental Cablevision of New England, Inc. v. United Broadcasting Co.*, 873 F.2d 717, 720–21 (4th Cir. 1989).

Under Maryland law, conversion is "an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motor of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261 (2004). The physical act is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Id.* (quoting *Allied Investment Corp. v. Jasen*, 354 Md. 547, 560 (1999)). "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Darcars*, 379 Md. at 261–62. And "[a]t minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id.* at 262 (quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414 (1985)).

Element alleges sufficient factual allegations to state a plausible claim for conversion. Specifically, Element alleges that "[a]t all relevant times [Element] was the owner" of the two lifts, and Forklift has improperly retained possession of the lifts. (Compl. ¶¶ 24–26). "Despite repeated and reasonable demand, [Forklift] has refused to return the Lifts to [Element] or pay [Element] the agreed collective purchase price of $275,000." (*Id.* ¶ 14). Further, Element alleges that Forklift acted with ill will. (*Id.* ¶ 28). Element has, therefore, pled sufficient factual allegations to survive Forklift's motion to dismiss.

## CONCLUSION

For the reasons stated above, Forklift's motion to dismiss will be denied. A separate order follows.

4/18/19
Date

Catherine C. Blake
United States District Judge

7